| | DATE FILED: February 4, 2015 2:07 PM<br>FILING ID: EC72F4A4414C0<br>CASE NUMBER: 2015CV30173 |
|---|---|
| DISTRICT COURT, ADAMS COUNTY, COLORADO<br>Court Address:<br>　　　1100 Judicial Center Drive<br>　　　Brighton, Colorado 80601 | |
| **Plaintiff:**<br><br>KRISTI PREESE, as next friend and Power of Attorney for her mother, Mary Johnson<br><br>**Defendant:**<br><br>WESTMINSTER MEDICAL INVESTORS, LLC, a Tennessee Limited Liability Company; and LIFE CARE CENTERS OF AMERICA, INC., a Tennessee Corporation. | |
| **Plaintiff's Counsel:**<br>LAW OFFICES OF J.M. REINAN, P.C.<br>Jerome M. Reinan, #22031<br>Jordana Griff Gingrass, #38195<br>1437 High Street<br>Denver, CO 80218-2608<br>(303) 894-0383<br>(303) 894-0384 (FAX)<br>jreinan@reinanlaw.com<br>jgingrass@reinanlaw.com | ▲ COURT USE ONLY▲<br><br>_____<br><br>Case No.:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** | |

　　**COMES NOW** the Plaintiff, KRISTI PREESE, as Next Friend and Power of Attorney for her mother, MARY JOHNSON, by and through Counsel, Law Offices of J. M. Reinan, P.C., and for her Complaint and Jury Demand against WESTMINSTER MEDICAL INVESTORS, LLC, a Tennessee Limited Liability Company and LIFE CARE CENTERS OF AMERICA, INC., a Tennessee Corporation, states and avers as follows:

### I.　　INTRODUCTION, PARTIES & VENUE

　1. Plaintiff Kristi Preese is the daughter and power of attorney of Mary Johnson. Mary Johnson is 84 years old, and as the result of age and disability, is unable to prosecute this case in her own name.

2. Defendant Westminster Medical Investors, LLC is a Tennessee Limited Liability Company. Upon information and belief, Westminster Medical Investors, LLC conducts business exclusively in Colorado through the ownership of the nursing home property known as Life Care Center of Westminster.

3. Defendant Life Care Centers of America, Inc. is a Tennessee corporation that provides operations and management services to Life Care Center of Westminster, located at 7751 Zenobia Court, Westminster, Colorado 80030.

4. Defendants Westminster Medical Investors, LLC and Life Care Centers of America, Inc. are closely related companies that have common ownership and management.

5. Because the two companies are so intertwined, they are referred to collectively in this Complaint as "Life Care."

6. At all times relevant, Life Care was responsible for the ownership, operation, management and staffing of Life Care Center of Westminster, herein "LCCW," and is vicariously liable for the acts and omissions of the LCCW nursing staff and administration.

7. Venue is proper within the Adams County District Court as the acts and omissions complained of herein took place within Adams County and because the amount in controversy exceeds the jurisdiction of the County Court.

## II.   FACTUAL BACKGROUND

8. Mary Johnson was admitted to LCCW on July 27, 2014 following a hospital stay for significantly increased confusion, which prevented her from living independently as she had in the past. She was admitted to LCCW's skilled nursing or Medicare nursing unit, which is by law supposed to offer her a higher level of supervision, staffing and care than the long term nursing unit.

9. Upon admission to LCCW, LCCW caused Plaintiff to sign an arbitration agreement that she did not want to sign, but she felt compelled to do so in order to have her mother admitted there. Plaintiff and her mother, Mary Johnson, exercised their statutory right to rescind this arbitration agreement by a letter dated September 18, 2014, which was received through certified mail by LCCW's administrator on October 7, 2014. Due to the statutory rescission of the arbitration agreement, the arbitration agreement is null, void and of no effect.

10. Upon her admission to LCCW, Mrs. Johnson's functional ability was evaluated by LCCW's nursing staff.

11. Included in this evaluation was Mrs. Johnson's fall risk.

12. The fall risk evaluation was negligently performed.

13. Among other things, the nurse who completed the fall risk evaluation failed to record Mrs. Johnson's actual nursing status and functional capabilities.

14. The nurse who performed the fall risk evaluation incorrectly and negligently recorded that Mrs. Johnson's cognition was normal and that she did not have any behaviors that demonstrated poor cognition.

15. By contrast, the facility admission nursing notes from July 27 clearly stated that Mrs. Johnson had been admitted to LCCW for "acute confusion."  Those nursing notes also indicated that Mrs. Johnson's gait was unsteady and that she was using a wheelchair, as opposed to a front wheeled walker, which is what the nurse performing the fall evaluation incorrectly noted in that evaluation.

16. As a result of the negligently performed fall risk evaluation, Mrs. Johnson was evaluated as a moderate fall risk instead of a high fall risk, which a proper evaluation would have assessed her as.

17. In part because Mrs. Johnson was improperly treated as a moderate fall risk, LCCW failed to implement a care plan that included reasonable and appropriate fall precautions.

18. Moreover, as a result of LCCW's failure to appropriately care plan Mrs. Johnson's fall risk, LCCW's nursing staff allowed Mrs. Johnson to use her front-wheeled walker for ambulation instead of the wheelchair that she was supposed to use.

19. LCCW also failed to provide sufficient staff and sufficiently trained staff to meet Mrs. Johnson's needs, which included, among other things, assistance in using the bathroom.

20. LCCW also failed to care plan for the additional problems with balance and confusion that accompanied the anti-anxiety medication, Lorazepam, that LCCW was giving Mrs. Johnson, allegedly for anxiety.

21. During the early hours of August 2, 2014, Mrs. Johnson was found on the floor of her bathroom with her arm scraped and bleeding.  Upon information and belief, Mrs. Johnson attempted to use the bathroom on her own due to a lack of sufficient staff to provide her with the assistance she required, and due to the fact that she was not being treated as a high fall risk.

22. Despite the obvious severity of Mrs. Johnson's fall, staff did not properly assess Mrs. Johnson for the possibility of additional injury – including a hip fracture -- and instead caused her to ambulate back to her bed.

23. Following this fall, Mrs. Johnson repeatedly complained to staff about left leg and pelvic pain.  Nursing staff diagnosed Mrs. Johnson with "anxiety," and gave her anti-anxiety medications.

24. Because of Mrs. Johnson's persistent pain complaints, a hip xray was eventually ordered, 5-7 hours later. Upon information and belief, the xray was inconclusive but interpreted as negative for a fracture.

25. Mrs. Johnson was repeatedly ambulated about the facility and was even caused to participate in therapies and engage in her usual activities, which necessarily involved bearing weight on her legs and hip.

26. Sometime over that weekend, a nurse or aide helped Mrs. Johnson to the bathroom. While attempting to use the toilet, Mrs. Johnson and the nurse/aide both heard a loud snap or crunch coming from Mrs. Johnson's pelvic area. The nurse/aide put Mrs. Johnson back to bed. No notes exist concerning that incident.

27. Nursing notes from August 3 at 3:23am indicate that Mrs. Johnson was experiencing pain in both of her legs for which received pain medication. An occupational therapy note from the following day, August 4, notes that Mrs. Johnson had fallen on the morning of August 2; that her left pelvic area was really hurting; that the pain level was at an 8 out of 10; and that the charge nurse was notified of her pain.

28. On the morning of August 4, a nurse from LCCW called Plaintiff and told her that her mother was experiencing a great deal of hip pain. Upon arriving at the facility, Plaintiff asked LCCW staff to have Mrs. Johnson's hip x-rayed again since Mrs. Johnson typically had a very high pain threshold and seemed to be in an unusual and concerning amount of pain. LCCW staff refused, stating that the previous hip x-ray had been negative.

29. Throughout the day, Mrs. Johnson continued to complain of increased pain in her pelvis and lower legs. Mrs. Johnson's left leg was also rotated, which is clear evidence of a hip fracture.

30. The nursing staff told Mrs. Johnson and Plaintiff that Mrs. Johnson was fine and was merely suffering from anxiety.

31. Nursing notes from August 4 at 2:20pm reveal that Mrs. Johnson continues to have complaints "of left hip pain from previous fall on 8/2/14."

32. Finally, around 6pm on August 4, with Mrs. Johnson's pain continuing, Plaintiff insisted that her mother be transported to the hospital. The facility finally complied.

33. At the hospital Mrs. Johnson was diagnosed with a hip fracture, which required a partial hip replacement and extensive rehabilitation.

34. As a result of Defendants' substandard care and neglect of Mrs. Johnson, Mrs. Johnson has incurred significant past, current and future medical and rehabilitation bills. In addition,

Mrs. Johnson has suffered and will continue to suffer pain and suffering, upset, loss of functional ability and permanent impairment and disfigurement.

### III    CLAIM FOR RELIEF: NEGLIGENCE

35. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

36. Life Care owed Mrs. Johnson, and thus by extension, the Plaintiff, the following common law and other legal duties of due care:

   a) A duty to properly evaluate Mrs. Johnson;
   b) A duty to properly plan Mrs. Johnson's care;
   c) A duty to provide adequate staff and adequately trained staff to meet Mrs. Johnson's skilled nursing needs;
   d) A duty to accurately document Mrs. Johnson's health status, pain complaints and other incidents;
   e) A duty to promptly notify Mrs. Johnson's family and physician of important changes of her condition;
   f) A duty to properly assess Mrs. Johnson after any incident such as a fall; and
   g) A duty to provide appropriate and timely treatment for any injuries.

37. Defendants breached these duties of due care by engaging in the acts and omissions described above and by, *inter alia*:

   a) Failing to properly assess Mrs. Johnson;
   b) Failing to provide adequate staff and adequately trained staff to meet Mrs. Johnson's needs;
   c) Failing to accurately document Mrs. Johnson's subjective and objective complaints as well as serious incidents;
   d) Failing to promptly notify the CDPHE of an injury of unknown origin;
   e) Failing to properly plan Mrs. Johnson's care;
   f) Failing to implement proper interventions to prevent Mrs. Johnson from suffering a fall and hip fracture;
   g) Failing to properly and promptly notify Plaintiff and Mrs. Johnson's physicians of Mrs. Johnson's fall injuries; and
   h) Failing to provide appropriate and prompt treatment to Mrs. Johnson following an injury.

38. As a result of the negligent acts and omissions described herein, Mrs. Johnson, and thus by extension, Plaintiff, has suffered injuries, damages and losses enumerated herein.

WHEREFORE, for the reasons set forth herein, Plaintiff prays that this Honorable Court enter judgment in her favor and against the Defendants on her claim for relief set forth above, and following trial to a jury, and award the following damages:

a) Non-economic loss;
b) Economic loss;
c) Pre and post judgment interest; and
d) Court costs, witness, and expert witness fees and other costs allowable under Colorado law.

**PLAINTIFF DEMANDS TRIAL TO A JURY OF SIX**

**This matter is exempt from C.R.C.P. 16.1 as the damages claimed herein exceed $100,000.**

Respectfully submitted this 4th day of February, 2015.

LAW OFFICES OF J.M. REINAN, P.C.

/s/ Jerome Reinan

Jerome Reinan, #22031
Jordana Griff Gingrass, #38195
1437 High Street
Denver, CO 80218-2608
(303) 894-0383
(303) 894-0384 facsimile
*Attorneys for the Plaintiff*

Plaintiff's address:

Kristi Preese
6520 West 74th Avenue
Arvada, Colorado 80003